## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| M.D., a minor, by and through her parent | : | No. 3:14cv1576 |
| and natural guardian, Desiree Mora-Dillon, | : | |
| and DESIREE MORA-DILLON, | : | (Judge Munley) |
| in her own right, | : | |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | |
| | : | |
| SKI SHAWNEE, INC., | : | |
| **Defendant** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Before the court for disposition is Defendant Ski Shawnee, Inc.'s (hereinafter "Ski Shawnee" or "defendant") motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Doc. 20). This motion is fully briefed and ripe for decision. For the reasons stated below, the court will deny defendant's motion.

**Background**

This case arises from a downhill skiing accident that occurred at Shawnee Mountain Ski Area on January 19, 2012. (Doc. 20-2, Def.'s

Statement of Material Facts ¶ 1).[1]  Plaintiff M.D., who was nine years old at the time of the accident, participated in a ski trip with her elementary school.  (Id.)  M.D. was a novice skier, a beginner with no skiing experience other than three lessons, which she took at Shawnee.  (Id. ¶ 2).

As she skied down "Little Chief" trail, M.D. collided with a snowmaking machine located on the slope.  (Id. ¶ 3).  M.D. suffered extensive injuries, including an open left forearm fracture, left open femoral shaft fracture, and facial lacerations.  (Doc. 1, Compl. ¶ 24).  Plaintiff contends that incomplete padding on metal components of the snowmaking machine caused her injuries.  (Doc. 21, Pl. Br. at 4).

Plaintiffs filed suit on November 26, 2013, alleging that defendant's negligence caused M.D.'s injuries and seeking compensatory damages. (Doc. 11, Redacted Compl.).  Defendant filed the instant motion for summary judgment on February 27, 2015.  (Doc. 20).  The parties then briefed the issues, bringing the case to its present posture.

---

[1]  Defendant filed a "Statement of the Material Facts in Support of its Motion for Summary Judgment," pursuant to Local Rule 56.1 on February 27, 2015.  Plaintiffs did not file a response to defendant's statement of material facts, and so they are, therefore, admitted.  L.R. 56.1 ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.")

**Jurisdiction**

The court has jurisdiction pursuant to the diversity statute, 28 U.S.C. § 1332.  Plaintiffs M.D. and Desiree Mora-Dillon are citizens of New Jersey.  (Doc. 11, Redacted Compl. ¶¶ 1-3).  Defendant Ski Shawnee is incorporated under the laws of the State of Pennsylvania with its principal place of business in Pennsylvania.  (Id. ¶ 5).  Additionally, the amount in controversy exceeds $75,000.  Because complete diversity of citizenship exists among the parties and the amount in controversy exceeds $75,000, the court has jurisdiction over the case.  See 28 U.S.C. § 1332 ("district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States[.]");  28 U.S.C. § 1441 (A defendant can generally remove a state court civil action to federal court if the federal court would have had original jurisdiction to address the matter pursuant to the diversity jurisdiction statute).  As a federal court sitting in diversity, the substantive law of Pennsylvania applies to the instant case.  Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)).

3

**Legal Standard**

Granting summary judgment is proper "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (quoting FED. R. CIV. P. 56(c)).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion.  Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990).  The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party.  Anderson, 477 U.S. at 248.  A fact is material if it might affect the outcome of the suit under the governing law.  Id.  Where the non-moving party will bear the burden of proof at trial, the party moving for

4

summary judgment may meet its burden by establishing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial.  Celotex v. Catrett, 477 U.S. 317, 322 (1986).  Once the moving party satisfies its burden, the burden shifts to the non-moving party, who must go beyond its pleadings, and designate specific facts with affidavits, depositions, admissions, or answers to interrogatories demonstrating that there is a genuine issue for trial.  Id. at 324.

**Discussion**

Defendant moves for summary judgment on plaintiff's negligence claims asserting that it had no duty to protect Plaintiff M.D. from the inherent risks associated with downhill skiing.  Plaintiff counters that she can state a *prima facie* negligence claim and that genuine issues of material fact preclude summary judgment.  After careful review, the court agrees with the plaintiff.

In Pennsylvania, the elements necessary to plead an action in negligence are: (1) the existence of a duty or obligation requiring a certain standard of conduct; (2) a failure to conform to that duty, or a breach thereof; (3) a causal connection between the breach and the harm; and (4)

actual loss or damage suffered.  <u>Atcovitz v. Gulph Mills Tennis Club, Inc.</u>, 812 A.2d 1218, 1222 (Pa. 2002).

In the instant motion, defendant only challenges the existence of a duty.  It argues that under the assumption of the risk doctrine, it owed plaintiff no duty.  "A duty, in negligence cases, may be defined as an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another."  <u>Atcovitz</u>, 812 A.2d at 1222. Defendant argues that plaintiff implicitly "assumed the risk" of colliding with snowmaking equipment, negating any duty it had to plaintiff, even though the plaintiff had no knowledge of the risk presented.[2]  We disagree.

Pennsylvania law, as stated by the Third Circuit Court of Appeals and Pennsylvania Superior Court, provides:

> Assumption of risk is based on the notion that, by taking the chance of injury from a known risk, the plaintiff has consented to relieve the defendant of its duty toward him.  <u>See</u> <u>Green v. Sanitary Scale Co.</u>, 431 F.2d 371, 374 (3d Cir. 1970); Restatement (Second) of Torts § 496C, comment h. Assumption of risk thus depends upon subjective awareness of the defect, which can be proved 'by circumstantial evidence sufficient to permit an inference that the plaintiff was aware [of] and understood the risk.'  <u>Staymates [v. ITT Holub Industries</u>, 527 A.2d 140,] 146.  To imply assumption of risk from the

---

[2]  Defendant, in fact, concedes for the purposes of this motion that M.D. neither "knew of [nor] appreciated the risk posed by snowmaking equipment."  (Doc. 22, Def. Reply at 2).

> Plaintiff's conduct, the conduct 'must be such as fairly to indicate that the plaintiff is willing to take his chances.' Restatement (Second) of Torts § 496C, comment h.  Whether the plaintiff knows of the existence of the risk and whether he appreciates its magnitude and unreasonable character are questions of fact to be determined by the jury.  <u>Staymates</u>, 527 A.2d at 146.  However, before the theory may be submitted to a jury, the defendant must produce evidence that the plaintiff fully understood the specific risk, and yet voluntarily chose to encounter it.   <u>Fish v. Gosnell</u>, 316 Pa. Super. 565, 577, 463 A.2d 1042, 1048 (1983).

<u>Wagner v. Firestone Tire & Rubber Co.</u>, 890 F.2d 652, 657 (3d Cir. 1989).

Pennsylvania law, following the Second Restatement of Torts, breaks assumption of risk into four separate categories, or types.  <u>See</u> RESTATEMENT (SECOND) OF TORTS at § 496A, cmt. c; <u>see also</u> <u>Jones v. Three Rivers Mgmt. Corp.</u>, 394 A.2d 546, 552-53 (Pa. 1978) (applying Restatement definitions of assumption of the risk); <u>Rutter v. Ne. Beaver Cty. Sch. Dist.</u>, 437 A.2d 1198 (Pa. 1981) (same).  In each of the four types of assumption of risk explained therein, knowledge of the risk is a prerequisite for the plaintiff to take it on herself.  Relevant to the instant case is category two:

> 2. A second, and closely related, meaning is that the plaintiff has entered voluntarily into some relation with the defendant **which he knows to involve the risk**, and so is regarded as tacitly or impliedly agreeing to relieve the defendant of responsibility, and to take his own chances.  Thus a spectator entering a baseball park may be regarded as consenting that

the players may proceed with the game without taking precautions to protect him from being hit by the ball.  Again the legal result is that the defendant is relieved of his duty to the plaintiff.  As to such implied assumption of risk, see § 496 C.

RESTATEMENT (SECOND) OF TORTS at § 496A, cmt. c, 2 (emphasis added).[3]

---

[3]  The remaining three categories, set forth at § 496 A, comment c, 1, 3-4, are as follows:

1. In its simplest form, assumption of risk means that the plaintiff has given his express consent to relieve the defendant of an obligation to exercise care for his protection, and agrees to take his chances as to injury from a known or possible risk.  The result is that the defendant, who would otherwise be under a duty to exercise such care, is relieved of that responsibility, and is no longer under any duty to protect the plaintiff.  As to such express assumption of risk, see § 496 B.

3. In a third type of situation the plaintiff, aware of a risk created by the negligence of the defendant, proceeds or continues voluntarily to encounter it.  For example, an independent contractor who finds that he has been furnished by his employer with a machine which is in dangerous condition, and that the employer, after notice, has failed to repair it or to substitute another, may continue to work with the machine.  He may not be negligent in doing so, since his decision may be an entirely reasonable one, because the risk is relatively slight in comparison with the utility of his own conduct; and he may even act with unusual caution because he is aware of the danger.  The same policy of the common law which denies recovery to one who expressly consents to accept a risk will, however, prevent his recovery in such a case.  As to such implied assumption of risk, see § 496 C.  As to the necessity that the plaintiff's conduct be voluntary, see § 496 E.

4. To be distinguished from these three situations is the fourth, in which the plaintiff's conduct in voluntarily encountering a known risk is itself unreasonable, and amounts to contributory negligence.  There is thus negligence on the part of both plaintiff and defendant; and the plaintiff is

Knowledge is the *sine qua non* of assumption of the risk.  Thus, there

can be no assumption of a risk where the risk is not known.

The Supreme Court of Pennsylvania has confirmed this view:

> It is axiomatic that appellant cannot be found to have implicitly
> assumed a risk of which he had no knowledge.  Comment "b"
> [to Restatement § 496] states that the whole concept of implied
> assumption is based on the actor's consent to accept the risk
> and look out for himself, which necessarily entails, according to
> comment "b", that the actor understand the "nature, character,
> and extent of the danger in addition to the facts which create
> the danger" (comment "b").  The standard of knowledge applied
> under this section is subjective, which means that the trier of
> fact, in determining what knowledge appellant had, may
> consider his age, lack of information, experience, intelligence or
> judgment (comment "c").  We are concerned with what
> appellant actually knew, and not what the reasonable man
> should have known.

Rutter, 437 A.2d at 1204.

As previously stated, only the Restatement's second category of

assumption of risk is potentially applicable.  This type of assumption of risk

arises when a "plaintiff has entered voluntarily into some relation with the

---

barred from recovery, not only by his implied consent to accept the risk, but
also by the policy of the law which refuses to allow him to impose upon the
defendant a loss for which his own negligence was in part responsible.
(See § 467.)

defendant which he **knows** to involve the risk." RESTATEMENT (SECOND) OF

TORTS at § 496A, cmt. c (emphasis added).  The Restatement therefore

charges plaintiff with "tacitly or impliedly agreeing to relieve the defendant

of responsibility, and to take his own chances." Id.  Where the court finds

such a knowing and voluntary agreement on the part of the plaintiff to take

the risk on himself, "the legal result is that the defendant is relieved of his

duty to the plaintiff." Id.

> At its core, assumption of risk mandates that:

> [A] plaintiff who fully understands a risk of harm to himself or
> his things caused by the defendant's conduct or by the
> condition of the defendant's land or chattels, and who
> nevertheless voluntarily chooses to enter or remain, or to
> permit his things to enter or remain within the area of that risk,
> under circumstances that manifest his willingness to accept it,
> is not entitled to recover for harm within that risk.

RESTATEMENT (SECOND) OF TORTS § 496C.  Under circumstances such as

those before the court, where a plaintiff has entered into a relationship with

defendant without right or privilege to do so other than the consent or

invitation of the defendant, the defendant is relieved from a duty to warn or

protect plaintiff from risks if the plaintiff knows of the risk and proceeds

anyway. RESTATEMENT (SECOND) OF TORTS § 496C cmt. d ("In some such

situations, as in the case of a licensee entering upon land, the historical

10

development of the law has limited the defendant's duty to an obligation to warn the plaintiff of risks of which he is unaware, and the plaintiff's mere knowledge of the risk is therefore sufficient to relieve the defendant of any liability.")

Section 496D expounds on the requirement for knowledge and appreciation of risk when the assumption thereof is implied as opposed to express.  "Except where he expressly so agrees, a plaintiff does not assume a risk of harm arising from the defendant's conduct unless he then knows of the existence of the risk and appreciates its unreasonable character."  RESTATEMENT (SECOND) OF TORTS § 496D.

Where reasonable persons could not differ as to whether the plaintiff knew or did not know of such a risk, the court may determine the issue; otherwise, it is a question for the jury. Id. at cmt. e.  Stated differently, where a risk is commonly known, expected, and intrinsic to a particular activity–a risk **inherent** to that activity–the plaintiff may be charged with knowledge of that risk by operation of law.  If, on the other hand, a plaintiff can credibly establish that she did not know of or fully appreciate the nature of the risk, the court simply cannot justify a finding that she voluntarily assumed the unknown risk.  See, e.g., Rutter, 437 A.2d at 1207

11

n. 3 ("We specifically reject this analysis (that plaintiff need not know or appreciate the risk) because of the general requirement of [Restatement (Second) of Torts] § 496 C and D that a plaintiff does not assume a risk of harm arising from the defendant's conduct unless he knows of the existence of the risk and appreciates its unreasonable character.")  We apply a subjective standard, asking what the plaintiff herself knew and understood, and take into consideration age, experience, and other relevant factors.  Id. at cmt. c.

Initially, the court notes that defendant concedes plaintiff did not know of or appreciate the risks associated with snowmaking equipment. As our explanation of the law above demonstrates, plaintiff's lack of knowledge negates the possibility of implied assumption of risk.  Solely on this basis, defendant's motion for summary judgment fails.

Moreover, that plaintiff was an inexperienced skier who did not know of or appreciate the risks of skiing distinguishes this case factually from the cases defendant cites in support of its position. See, e.g., Hughes v. Seven Springs Farm, Inc., 762 A.2d 339 (2000) (high school student, intermediate level skier; ticket waiver acknowledged risks)[4]; Chepkevich v. Hidden

[4] "By voluntarily proceeding to encounter a known or obvious danger, the invitee is deemed to have agreed to accept the risk and to undertake to

12

Valley Resort, L.P., 2 A.3d 1174 (Pa. 2010) (adult, experienced skier,

season pass holder); Bjorgung v. Whitetail Resort, LP, 550 F.3d 263 (3d

Cir. 2008) (seventeen years old, expert skier, experienced downhill

competitor).  Here, the nine-year-old plaintiff was a novice skier, having

had only three lessons (conducted by defendant).  The court will not

determine plaintiff's specific level of experience or knowledge; we leave

that to a jury.  Nonetheless, the existence of genuine issues of material fact

requires denial of summary judgment.

Defendant argues that implied assumption of risk does not require

knowledge and appreciation of the risk.  In making this argument,

defendant conflates two discrete doctrines: voluntary assumption of risk

and the inherent risk doctrine.  A court can imply assumption of risk, as

discussed above, only when the plaintiff knew of and appreciated the risk

involved.  The inherent risk doctrine, however, does not require knowledge,

because it is not concerned with the plaintiff at all.

"Inherent risk doctrine" is the notion that a defendant is under no duty

to protect a plaintiff from the risks inherent in a given activity, because such

---

look out for himself. . . . It is precisely because the invitee assumes the risk
of injury from obvious and avoidable dangers that the possessor owes the
invitee no duty to take measures to alleviate those dangers." Hughes, 563
Pa. at 507-508.

risks are expected, common, frequent, and not unreasonable.  If there is no duty, there can be no negligence.  This does not, however, mean that all individuals who engage in activities with inherent risks assume those risks without regard for whether they know of them or not.  It simply means that the plaintiff will be unable to establish a *prima facie* case of negligence.

Defendant's arguments conflating assumption of risk and inherent risk rely on the Pennsylvania Skiing Responsibility Act, Jones v. Three Rivers Management Corp., and several other federal and state cases. After careful consideration, we reject defendant's legal theory.

First, defendant argues that Pennsylvania's "Skiing Responsibility Act," 42 PA. CONS. STAT. ANN. § 7102 (hereinafter "section 7102"), relieves it from any duty to plaintiff.  Defendant seems to believe that section 7102 imposes assumption of risk upon anyone who skis with respect to all inherent risks of skiing.  We disagree.

Section 7102 merely acknowledges that, "as in some other sports, there are inherent risks in the sport of downhill skiing."  Id. at § 7102(c)(1). The Act does not define "inherent risk," nor does it alter comparative negligence in relation to skiing injuries.  Next, the Act expressly preserves

14

the doctrine of voluntary assumption of risk as it pertains to skiing injuries. Id. at § 7102(c)(2).  To be precise, the Act states that "[t]he doctrine of voluntary assumption of risk as it applies to downhill skiing injuries and damages **is not modified**" by the enactment of comparative negligence in Pennsylvania.  Id. (emphasis added).

As such, by its own terms, the Act leaves assumption of risk unchanged, requiring, as discussed above, that a defendant establish that the plaintiff knowingly and voluntarily assumed the risk in order to invoke the defense.  And, as we have also discussed, defendant has failed to meet this burden.

Defendant next relies on the Pennsylvania Supreme Court case of Jones v. Three Rivers Management Corp., 394 A.2d 546 (1978) to explicate a version of assumption of the risk wherein "a person assumes as a matter of law risks which are common, frequent, expected and inherent in the activity."  This argument fails for several reasons.

The Pennsylvania Supreme Court expressly rejected this version of assumption of risk in Rutter v. Northeastern Beaver County School District, 437 A.2d 1198 (Pa. 1981).  The Rutter court considered an argument whereby the existence of a relationship between plaintiff and defendant of

15

the type before this court automatically gives rise to an assumption of risk.

Rutter, 437 A.2d at 1207.  The court looked to a law review note for an

articulation of this analysis:

> (1) the parties have entered into a voluntary relationship; (2)
> the plaintiff, by entering into this relationship, assumes the risks
> incidental to it; (3) the defendant has no duty with respect to
> these incidental risks -- thus if plaintiff's injury arises from an
> incidental risk, defendant is not negligent because he did not
> breach a duty; (4) the conduct of plaintiff in encountering the
> particular risk is not relevant because he assumes the risk as a
> matter of law when he voluntarily enters into the relationship
> with the defendant -- thus plaintiff assumes the risk even if his
> conduct is reasonable and even if he does not know or
> appreciate the particular risk at the time he encounters it.

Rutter, 437 A.2d at 1207, quoting Note, Contributory Negligence and

Assumption of Risk–The Case for Their Merger, 56 MINN. L. REV. 47, 49

(1971).  Citing to Section 496C and 496D's "general requirement . . . that a

plaintiff does not assume a risk of harm arising from the defendant's

conduct unless he knows of the existence of the risk and appreciates its

unreasonable character," the court rejected this analysis.  Id.

Second, the entire assumption of risk discussion in Three Rivers was

dicta.  In that case, a plaintiff was injured by a foul ball while she walked on

a concourse.  The Superior Court rejected a jury verdict in favor of the

plaintiff, finding that the trial court had erred in denying defendants'

motions for nonsuits and directed verdicts.  The Supreme Court did not find

that plaintiff had assumed the risk of flying foul balls, but instead held that

the Superior Court erred when it applied the "no-duty" rule to relieve

defendants of liability.  Three Rivers, 394 A.2d at 552.  The Supreme Court

reinstated the verdict for the plaintiff.  Id. at 553.  Most importantly, the

Court examined the specific facts of the case–including the layout of the

stadium and the location of the plaintiff when she was struck, and how that

differed from the expectations that a ballpark patron might have–and

whether plaintiff had established the elements of negligence.

The Three Rivers court clearly explained that the issue in that case

(as in all such cases where a plaintiff is injured by a risk inherent to an

amusement like a baseball game or an amusement park) was not

assumption of risk, but merely simple negligence.  "Although 'assumption

of the risk' language is used, the issue is not one of the plaintiff's

subjective consent to assume the risks of defendant's negligent conditions,

but rather whether defendant was negligent in failing to protect plaintiff

from certain risks."  Three Rivers, 394 A.2d at 549.  The court stated that

inherent risks, such as the lack of light in a movie theater or the speed of a

roller coaster, are frequent, common, and expected occurrences within

17

their respective contexts.  Id. at 551.  This is not because the patrons who attend these venues have knowingly and voluntarily assumed these risks, but because these risks are not unreasonable, and are therefore "not sufficient to establish, *prima facie*, a breach of the standard of care . . . ." Id. at 550.

The court did not find, however, that all risks attendant to an amusement venue are inherent, and therefore can never beget liability. "[E]ven in a 'place of amusement' not every risk is reasonably expected." Id. at 551.  A plaintiff may recover when injured by an inherent risk where the defendant deviated in some relevant respect from established custom. Id. at 550.  A plaintiff may also recover where the risk created by defendant is not inherent to the amusement because it is not reasonably expected. Id. at 551.  Further, "[t]he question of whether a risk is properly to be anticipated cannot be answered by looking to whether exposure to such risks is customary in the trade.  This would permit [defendants] to avoid liability for universally prevalent negligent conditions, an undesirable result."  Id.

Here, defendant argues that because all area ski resorts use snow machines, the machines are common and expected, and therefore an

inherent risk of downhill skiing.  Defendant presents no evidence beyond

an averment of custom to demonstrate that the use of such machines is

inherent to downhill skiing.  Moreover, nothing before the court establishes

that the particular machine in question was located, constructed, padded,

and operated in such a manner that did not present an unreasonable,

unexpected risk from which defendant would have had a duty to protect

plaintiff.  Further, defendant provides no binding precedent establishing

that snowmaking machines are an inherent risk of downhill skiing.  Thus,

defendant has failed to establish that the risks alleged to have caused

plaintiff's injuries were inherent to downhill skiing.

**Conclusion**

Defendant's motion for summary judgment fails for three reasons.

First, plaintiff's lack of knowledge and appreciation of the risks associated

with snowmaking equipment negates the possibility that she impliedly

assumed the risk of colliding with such equipment.  Even absent

defendant's concession that plaintiff had no knowledge of such risks,

genuine issues of fact regarding plaintiff's level of experience and

knowledge preclude summary judgment.  Second, Pennsylvania's Skiing

Responsibility Act preserves the doctrine of voluntary assumption of risk

with respect to skiing injuries, thus leaving unchanged the requirement that

defendant establish that the plaintiff knowingly and voluntarily assumed the

risk of colliding with snowmaking equipment.  Third, defendant failed to

establish that the risks alleged to have caused plaintiff's injuries were

inherent to downhill skiing.  Accordingly, the court will deny defendant's

motion.  An appropriate order follows.

**DATE: 6/23/15**                                    **s/ James M. Munley**

**JUDGE JAMES M. MUNLEY**

**United States District Court**